## COUNTY OF BERKSHIRE, SEPTEMBER TERM 1853, AT LENOX.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. GEORGE T. BIGELOW,
Hon. BENJAMIN F. THOMAS, } Justices.
Hon. PLINY MERRICK,

MEMORANDUM. On the 7th day of March, 1853, the Hon. Caleb Cushing resigned the office of justice of this court, which he had held since the 22d day of May, 1852.

On the 29th day of March, 1853, the Hon. Pliny Merrick of Worcester was appointed a justice of this court, in place of the Hon. Caleb Cushing, and took his seat on the bench, April 4th, 1853.

---

BILLINGS PALMER, Administrator vs. ENSIGN D. STEVENS & another.

ENSIGN D. STEVENS vs. LOVET TAFT & another.

An administrator of a mortgagee of real estate who has obtained judgment and possession for foreclosure can maintain trespass against an heir at law of the mortgagee, for cutting and carrying away wood and timber from the mortgaged premises.

A registry copy of a deed executed in 1792, acknowledged before the " Mayor of

the city of Hudson," and recorded in the registry of deeds in this commonwealth in 1802, may be read in evidence, in the absence of any thing to show that the acknowledgment was not properly made before such officer.

THE first of the abovenamed actions was for a trespass upon certain land described in the writ, and cutting and carrying away wood thereupon. It was commenced January 8th, 1850, by Robert T. Barnard, administrator of Stephen Stevens, but on his decease pending the suit, Billings Palmer was admitted to prosecute the action, as his administrator *de bonis non*. The premises upon which the alleged trespass took place, were conveyed by said Stephen Stevens to Mary Sumner, March 8th, 1841, and on the same day mortgaged back by her to Stevens, who held the same at his death. After his decease, his administrator, Robert T. Barnard, obtained judgment and execution for possession of the mortgaged premises, March 13th, 1848, in order to foreclose the mortgage. The trespasses were alleged to have been committed at various times between February 1st, 1849, and January 8th, 1850. Jonathan C. Stevens, one defendant, was a son of said Stephen Stevens, and Ensign D. Stevens, the other defendant, was a son of said Jonathan C. The latter, however, had conveyed all his interest in the premises to other parties, December 1st, 1846.

At the trial in the court of common pleas, before *Mellen*, J. the defendants contended that an administrator of a mortgagee having taken possession to foreclose, could not, before the expiration of the three years allowed to redeem, maintain trespass against one of the heirs of the mortgagee, the estate not being needed for the payments of the intestate's debts; but the presiding judge overruled the objection.

The defendants claimed title to the premises in controversy from the Lower Housatonic Proprietary, by virtue of locations made by said Jonathan C. Stevens, under a deed from the heirs of Joseph Goodrich, deceased, dated March 17th, 1843. They also offered a certified copy of a deed of the same premises to said Goodrich from Peter A. Fundy, dated February 15th, 1792, acknowledged before Seth Jenkins, " Mayor of the city of Hudson," and recorded in the registry of deeds at

Great Barrington, in January, 1802. The plaintiff objected to the admission of the first of said deeds, for reasons unnecessary to be reported, and to the last because it was not acknowledged before an authorized person, and, therefore, not properly recorded, and not capable of proof by a registry copy; but they were both admitted *de bene esse.* The locations under which the defendants claimed the premises, were made September 9th, 1843, and they offered the records of the proprietary in proof of such locations. The plaintiff objected that at the time of such location there was no organization or legal officers of said proprietary, and no legal locations thereof upon the records, and the presiding judge so ruled. The verdict was for the plaintiff, and the defendants filed their exceptions

*J. Rockwell,* for the defendants.

*I. Sumner & B. Palmer,* for the plaintiff.

The second action was a writ of entry, tried in this court before *Metcalf,* J. in which the demandant claimed title under the same locations as set up by the defendants in the first suit. The same objection to the legal organization of the proprietary and to the locations in question, was made in this, as in the former case, and the presiding judge ruled that said records could not be used as evidence, and the verdict was for the tenants. The records were made a part of the report for the consideration of the whole court, and if the ruling was wrong, a new trial was to be granted.

*J. Rockwell,* for the demandant.

*I. Sumner & B. Palmer,* for the tenants.

The records of the Lower Housatonic Proprietary, by which the demandant proposed to prove title, were made by one Hezekiah Lathrop; but it did not appear by said records, that said Lathrop was ever legally elected clerk of said proprietary; but the contrary distinctly appears. It appears by said records, that the original organization of said proprietary had become extinct long before the record under which the demandant claimed was made. Therefore the tenants objected to the introduction of said records, because there was no record showing a reorganization of said proprietary legally

13*

made, agreeable to Rev. Sts. *c.* 43, § 2. See also *Monumoi* v *Rogers*, 1 Mass. 159.

DEWEY, J. The position taken in the defence, that an administrator of a mortgagee of real estate, who shall have obtained judgment and possession under it for foreclosure, cannot maintain an action of trespass against one of the heirs at law of the mortgagee for entering thereon and cutting and carrying away wood and timber, cannot be maintained. The objection, as presented, is, that the relation of these parties to each other, as respects such real estate, will not permit such action. It is said to be so, because the plaintiff, as administrator, is seised of the mortgaged premises in trust for those heirs at law of the mortgagee who would, by the statute of distributions, have been entitled to the money, had the premises been redeemed, and that being thus holden in trust for the heirs, they cannot be liable as trespassers. The authority of such administrator over mortgages of real estate, in which the intestate was mortgagee, and the nature of his interest, is regulated by Rev. Sts. *c.* 65, §§ 11–15. But these provisions do not authorize the individual who may be the heir at law, on the final distribution of the assets of the intestate, to interfere with the possession of the administrator; much less to take and convert the property to his own use. During the three years' possession to foreclose the mortgage, the possession is wholly in the administrator. If the estate is redeemed, the money is paid to him, and he is to account for it as personal estate. It is only in cases where the land shall not be redeemed, or where it may not have been sold by him for payment of debts or legacies, or charges of administration, that it is to be assigned and distributed among the same persons and in same proportions as the personal estate of the intestate. In the mean time his relation to it is the same as to personal estate. The right of possession is exclusively with him, and not in the heirs at law, and any interference by them would subject them to an action by him.

We have thus far considered the case as though Jonathan C. Stevens, at the time of the alleged tortious acts, held the interest of a son and heir at law of the mortgagee, and assum-

ing this to be so, we are of opinion that the action might be maintained against him. In fact, however, it appears by the case stated, that he had parted with his interest before the committing the alleged trespasses in carrying away the wood and timber. This latter view of his relation to the mortgaged estate, we have not deemed it important particularly to consider.

Independently of this objection, the defendants claimed to have a good defence by a title acquired by Jonathan C. Stevens, by virtue of locations made under deeds of certain proprietors of Lower Housatonic Proprietary. The plaintiff objected to the validity of these locations, and among other grounds, for the reason that there was no legal organization of the said Proprietary at the time said locations were made, and so nothing passed thereby. In regard to this part of the case, it seems proper that the defendants should have the opportunity to present their case upon all the competent evidence that can be offered tending to show the legality of the organization in 1843, and that it is not to be confined to the mere book referred to in the case, but all other papers that can be properly called in aid to show the nature of the organization. The book itself will require evidence of its authenticity, and so also the other papers which the defendants now offer as a part of the official doings of the Proprietary. It seems to us to have been the purpose of the trial to present as a question of law the points of the legal organization of the Proprietary in 1843, but the extent of the evidence on this subject being now a matter of controversy, the court have thought proper in this, and the case of Ensign D. Stevens *v.* Taft & another, involving the like question, to set aside the verdict, and order a new trial for the purpose of presenting all the evidence upon that point.

Various other objections were taken as to the evidence offered to prove the execution and acknowledgment of certain deeds introduced into the case. Many of these may be obviated on a new trial, and need not be now settled. One of these, which will perhaps arise again, we have considered. It is the objection taken to the deed of Peter A. Fundy to

Joseph Goodrich, recorded in 1802, purporting to have been acknowledged before Seth Jenkins, mayor of the city of Hudson. This deed, it is said, was not legally acknowledged, and therefore not legally recorded. Neither party has produced any evidence of the laws of New York at that period, showing the extent of the authority of the mayor of Hudson. It is well known that those officers formerly exercised more extensive powers than at the present day, holding mayor's courts, &c. The court are of opinion that in reference to a deed recorded fifty years since, upon the acknowledgment before the mayor of the city of Hudson, that it may be presumed to have been properly acknowledged before such officer, and a registered copy may be read in evidence, if there be no other objection than the want of proper acknowledgment before a magistrate. The *St.* of 1783, *c.* 37, § 4, authorized its acknowledgment before a justice of the peace, or magistrate of any of the United States, or in any other state or kingdom in which the grantor may reside. An American consul at a foreign port was held to be a magistrate within the meaning of this act, in the case of *Scanlan* v. *Wright*, 13 Pick. 523. For the reasons we have stated, the verdict is to be set aside, and a                    *New trial had.*